**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leuwanda J. Lynch-Guzman, ) | No. CV-07-1802-PHX-GMS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Michael Astrue, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court are the Motion for Summary Judgment of Plaintiff Leuwanda J. Lynch Guzman (Dkt. # 16) and the Cross-Motion for Summary Judgment of Defendant Michael Astrue, Commissioner of Social Security (Dkt. # 20). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's cross-motion.

**BACKGROUND**

Plaintiff first applied for Social Security benefits on February 17, 1998 (R. at 75), asserting a primary diagnosis of rheumatoid arthritis (*see* R. at 50). She alleged a disability onset date of August 13, 1997. (R. at 75.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 51, 59.) Plaintiff appealed to an Administrative Law Judge ("ALJ"). (R. at 63.) The ALJ agreed that Plaintiff was not disabled, and therefore entered an unfavorable decision. (R. at 17-25.) The Appeals Council declined to review that decision. (R. at 7.) However, the district court vacated the ALJ's decision and remanded for further proceedings. (R. at 302-13.) On remand, the ALJ again entered an unfavorable

decision. (R. at 355-66.) That decision was reversed by the Appeals Council. (R. at 383-85.) The ALJ then held a third hearing (R. at 459-72), and again issued an unfavorable decision (R. at 288-96).

In determining whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 (2003).[1] At step one, the ALJ determined that Plaintiff was not engaged in substantial gainful activity. (R. at 289-90.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of fibromyalgia and rheumatoid arthritis. (*Id.*) At step three, the ALJ determined that neither of these impairments, either alone or in combination, were severe enough to meet or equal any of the Social Security Administration's listed impairments. (R. at 290-91.) At step four, the ALJ determined that Plaintiff did not retain the residual functional capacity ("RFC") to perform her past relevant work as a certified nurse's assistant. (R. at 293-94.) At step five, the ALJ determined that Plaintiff could perform a significant number of other jobs in the national economy. (R. at 294.) Specifically, the ALJ concluded that Plaintiff could perform

---

[1]Under that test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

- 2 -

1 work as a cashier, parking lot attendant, or food and beverage clerk. (R. at 294-95.)
2 Therefore, the ALJ concluded that Plaintiff was not disabled. (R. at 295-96.)

3 The Appeals Council declined to review the decision. (R. at 268-71.) Plaintiff filed the instant complaint on September 21, 2007, seeking this Court's review of the ALJ's denial of benefits.[2] (Dkt. # 1.) Plaintiff filed her Motion for Summary Judgment on January 11, 2008. (Dkt. # 16.) Defendant filed his Cross-Motion for Summary Judgment on February 12, 2008. (Dkt. # 20.)

## DISCUSSION

### I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either

---

[2]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

1  outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II.   Analysis**

Plaintiff argues that the ALJ erred by: (A) improperly rejecting the opinion of Plaintiff's treating physician, Dr. Bhalla, (B) discounting Plaintiff's subjective complaint testimony, (C) relying on the opinion of the state agency reviewer, and (D) determining Plaintiff's residual functional capacity based on the evidence presented. (Dkt. # 18 at 2-3.) The Court will address each argument in turn.

**A.   The Treating Physician's Opinion**

Plaintiff objects to the ALJ's decision to reject the opinion of Dr. Bhalla, Plaintiff's treating physician. (Dkt. # 18 at 3-12.) The Court will first discuss Dr. Bhalla's opinion, then review the medical evidence on which the ALJ relied in discounting that opinion, and finally address each of Plaintiff's objections to the ALJ's reliance on that medical evidence.

**1.   Dr. Bhalla's Opinion**

Dr. Bhalla completed an RFC questionnaire in which he wrote that Plaintiff's fibromyalgia has resulted in multiple tender points, nonrestorative sleep, frequent severe headaches, severe fatigue, numbness and tingling of the upper extremities, and morning stiffness. (R. at 398.) Dr. Bhalla went on to state that Plaintiff suffers from moderate to moderately severe pain precipitated by stress and changing weather. (R. at 399.) He further noted that Plaintiff suffers from moderate fatigue. (*Id.*) Dr. Bhalla stated that Plaintiff's pain and fatigue often severely interfere with her attention and concentration. (R. at 400.)

On another assessment, Dr. Bhalla opined that in an eight-hour workday Plaintiff could only sit for two hours, stand for one hour, and walk for one hour. (R. at 396.) Dr. Bhalla further stated that Plaintiff could lift and carry no more than ten pounds occasionally (*id.*), could not perform repetitive actions with her hands or feet (R. at 397), and was limited in the amount of bending, reaching, and similar actions she could perform (*id.*). Dr. Bhalla thus concluded that Plaintiff could not sustain work on a regular and continuing basis. (R. at 400.)

- 4 -

### 2. The ALJ's Rejection of Dr. Bhalla's Opinion

After recapitulating Dr. Bhalla's RFC assessments in detail, the ALJ rejected Dr. Bhalla's ultimate opinion that Plaintiff could not sustain regular work. (R. at 292.) First, the ALJ found Dr. Bhalla's opinion "contrary to his own examination findings of record since December 11, 1997, which reveal normal range of motion, no swelling, and only some diffuse trigger point tenderness mostly involving the upper torso." (R. at 292; *see* R. at 347-48.) The ALJ was referring to Dr. Bhalla's medical assessments, in which he found no swelling, no headaches, no fatigue, no numbness, no fever, no night sweats, normal sleep patterns, normal grip, less than thirty minutes of morning stiffness, and otherwise normal physical and musculoskeletal responses. (R. at 347-48.) The only exception was Plaintiff's self-report of pain. (*See id.*)

The ALJ further concluded that Dr. Bhalla's latest assessment of Plaintiff's work capacity was "merely an endorsement of the claimant's subjective complaints." (R. at 292.) The ALJ noted that Dr. Bhalla had completed a similar assessment two years earlier (R. at 349-50), and although Dr. Bhalla stated that Plaintiff's work capacity had decreased by the second assessment (R. at 396-97), there was "no corresponding deterioration of the claimant's physical condition evident during that time period." (R. at 292.) The ALJ relied on the fact that Dr. Bhalla "report[ed] normal [medical] findings" during that period, "except [that] the claimant complain[ed] of morning stiffness, lasting less than 30 minutes." (R. at 292; *see* R. at 347-48.)

After finding Dr. Bhalla's opinion inconsistent with his own findings, the ALJ then concluded that Dr. Bhalla's opinion was "not supported by objective clinical and laboratory findings." (R. at 292.) The ALJ first referenced a series of MRI, x-ray, and CT scans, which showed that Plaintiff was negative for bleed, edema, and shift (R. at 293, *see* R. at 415), and while there were some intensity changes in Plaintiff's rotator cuff and "very slight" degenerative disc disease at the C5-6 vertebra, there was no tear or significant impingement syndrome of the rotator cuff and no significant abnormality of the cervical spine. (R. at 293; *see* R. at 337, 339.) The ALJ also noted that Plaintiff had both high and normal

sedimentation rates (R. at 292; *see* R. at 345, 403, 418), that Plaintiff's high rheumatoid factor was treated conservatively in the absence of inflammation (R. at 292; *see* R. at 227), and that the swelling Plaintiff did experience was controlled by medication without substantial recurrence (R. at 292; *see* R. at 192-96).

The ALJ then credited the testimony of several doctors who testified that Plaintiff was not disabled. An examining doctor, Dr. Hulsey, concluded that all neurological findings were normal, despite Plaintiff's complaints of joint and body pain. (R. at 293; *see* R. at 416-17.) Plaintiff had a good range of motion in flexion, extension, side bending, and rotation in all spinal segments. (R. at 293; *see* R. at 416.) Dr. Hulsey found that Plaintiff's deep tendon reflexes were equal and active in all extremities, her strength was +5/5 in all extremities bilaterally, and her sensation and fine motor coordination were intact. (R. at 293; *see* R. at 416.) The only exception was tenderness to palpation in the left trochanteric bursa, but Plaintiff had no muscle spasms in any region and no tenderness to palpation in any spinal region. (R. at 293; *see* R. at 416.)

The ALJ also assigned "probative weight" to the state agency's reviewing physician, whose testimony the ALJ found consistent with the objective medical evidence. (*See* R. at 293.) The physician testified that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could sit for about six hours in an eight-hour workday, and could stand or walk for about six hours in an eight-hour workday. (R. at 199.) The physician based that conclusion on a review of Plaintiff's medical history, which showed continued improvement, no evidence of synovitis, and inflammation under control. (R. at 200.) The physician also noted that Plaintiff had no manipulative limitations, visual limitations, or communicative limitations. (R. at 201-02.)

Based on all the evidence described above, the ALJ concluded that Plaintiff could perform "a significant range of sedentary work activity on a full-time basis."[3] (R. at 293.)

---

[3]Sedentary work activity is the lowest level of work activity, requiring the exertion of less than ten pounds of force, sitting most of the day, and standing or walking only

### 3. Plaintiff's Arguments

Plaintiff asserts that it was error for the ALJ to reject Dr. Bhalla's opinion. "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). "The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Id.* at 762 (internal quotation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted).

First, Plaintiff asserts that the testimony of Dr. Bhalla was "contradicted, if at all, only by the opinion of the nonexamining, non-testifying state agency reviewer," and thus suggests that the ALJ could only reject Dr. Bhalla's opinion based on that testimony. (Dkt. # 18 at 4.) This assertion, however, is untrue. As noted above, the ALJ relied not only on the opinion of the state agency's reviewing physician, but also on MRI, x-ray, and CT scans, Plaintiff's rheumatoid factor and sedimentation rates, the testimony of Dr. Hulsey, and Dr. Bhalla's own findings, which the ALJ found to be inconsistent with Dr. Bhalla's opinion. (*See* R. at 292-93.) Thus, the factual predicate of Plaintiff's argument in this regard is incorrect.

Second, Plaintiff argues that the ALJ's statement characterizing Dr. Bhalla's assessment as "not supported by objective clinical and laboratory findings" (R. at 292) was insufficient to achieve the level of specificity required to reject a treating physician's opinion. (Dkt. # 18 at 6-7.) While Plaintiff is correct that such a bare assertion is insufficient to meet the specificity required by law, *see Embrey*, 849 F.2d at 421, the ALJ can meet the specificity requirement by "set[ting] forth his own interpretations and explain[ing] why they, rather than

---

occasionally. *See Dictionary of Occupational Titles*, Appendix C, *available at* http://www.oalj.dol.gov/public/dot/references/dotappc.htm (last visited Sept. 5, 2008).

- 7 -

1  the doctors', are correct," *id.* at 421-22.  As described in the preceding paragraphs, that is
2  precisely what the ALJ did in this case.  The ALJ detailed the medical evidence and
3  described why she believed it indicated that Plaintiff could perform sedentary work.  (*See* R.
4  at 292-93.)  Because the ALJ did not simply make the bare assertion that Dr. Bhalla's
5  opinion was not supported by the evidence, the ALJ did not err in this regard.

6  Third, Plaintiff argues that the ALJ erred in concluding that Dr. Bhalla's assessment
7  was "merely an endorsement of [Plaintiff's] subjective complaints" (R. at 292) because the
8  ALJ articulated no basis for that belief.  (Dkt. # 18 at 7-8.)  Again, the ALJ did articulate a
9  basis for that belief.  The ALJ noted that Dr. Bhalla filled out two medical assessments of
10 Plaintiff's work ability two years apart, and although Dr. Bhalla outlined more extensive
11 work limitations in the second form, there were no corresponding physical deteriorations
12 during that time period.  (*See* R. at 349-50, 396-97.)  While the ALJ's conclusion is by no
13 means compelled by the evidence, it is one possible conclusion that may rationally be drawn
14 therefrom.  "When the evidence before the ALJ is subject to more than one rational
15 interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198; *see also*
16 *Matney*, 981 F.2d at 1019 ("[I]f the evidence can support either outcome, the court may not
17 substitute its judgment for that of the ALJ.") (citation omitted).  Thus, the Court finds no
18 error.

19 Fourth, Plaintiff argues that the ALJ was not permitted to reject Dr. Bhalla's
20 assessments simply because they "were completed by Dr. Bhalla at the request of counsel in
21 conjunction with [Plaintiff's] application for disability benefits."  (Dkt. # 18 at 8-9 (quoting
22 R. at 292).)  Plaintiff cites to *Lester v. Chater*, a Ninth Circuit panel opinion, for the
23 proposition that "[t]he purpose for which medical reports are obtained does not provide a
24 legitimate basis for rejecting them."  81 F.3d 821, 832 (9th Cir. 1996).  However, as a later
25 opinion explained, Ninth Circuit decisions before *Lester* had held that an ALJ *is* permitted
26 to consider whether a doctor's opinion has been solicited in assessing credibility.  *See*
27 *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir.1988), *quoted in Saelee v. Chater*, 94 F.3d 520,
28 522-23 (9th Cir. 1996).  Because "only a panel sitting en banc may overturn existing Ninth

- 8 -

1 Circuit precedent," *United States v. Camper*, 66 F.3d 229, 232 (9th Cir.1995), the Ninth
2 Circuit has stated that *"Lester* is limited to the particular circumstances presented therein,"
3 *Saelee*, 94 F.3d at 523. The Court concludes that the circumstances of this case are much
4 more analogous to *Saelee* than *Lester*, for in *Saelee* the doctor's opinion lacked an objective
5 medical basis and was inconsistent with the doctor's own treatment notes. *See id.* The Ninth
6 Circuit has considered those factors dispositive in distinguishing *Lester* cases from *Saelee*
7 cases. *See Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996). The ALJ made those
8 very findings here. (R. at 292.) Therefore, the ALJ did not err in considering the solicited
9 nature of Dr. Bhalla's opinion when evaluating the doctor's credibility.[4]

10 Finally, Plaintiff argues that the ALJ erred in finding that Dr. Bhalla's assessments
11 were "contrary to his own examination findings." (Dkt. # 18 at 9-12 (quoting R. at 292).)
12 Plaintiff makes a variety of challenges on this point, asserting that the ALJ gave too much
13 weight to treatment notes indicating an absence of swelling and not enough to those notes
14 indicating the presence of swelling (*id.* at 9-10), that normal test results do not always rule
15 out severe fibromyalgia (*id.* at 10-11), and that the ALJ should not have given more weight
16 to Plaintiff's normal sedimentation rates than to her high sedimentation rates (*id.* at 11-12).
17 All of these arguments go to the weight of the evidence, rather than to whether the ALJ was
18 permitted to rely upon it. Weighing the evidence, evaluating credibility, and resolving

---

[4]Regardless, even if the ALJ erred in considering that Dr. Bhalla's testimony was solicited, that error would be harmless. Where an ALJ's error does not affect his ultimate conclusion, the error is harmless. *See Batson*, 359 F.3d at 1197 (holding that an ALJ's erroneous assumption that a claimant sat while watching television, as opposed to moving about, did not affect the ALJ's ultimate conclusion and therefore, even if it constituted error, was harmless). Here, the ALJ's statement that Dr. Bhalla's testimony was solicited was but one sentence amidst several pages of text discussing the objective medical evidence and the internal inconsistencies that undermined Dr. Bhalla's opinion. (*See* R. at 292-93.) There is no indication that the ALJ would have ruled differently had Dr. Bhalla's opinion not been solicited; to the contrary, when summing up why she was discounting Dr. Bhalla's testimony and finding that Plaintiff could perform sedentary work, the ALJ never mentioned that factor again. (*See* R. at 292-93.) Thus, the Court concludes that the ALJ would have reached the same conclusion in any event, and therefore that any error was harmless.

ambiguities and conflicts in the evidence is the exclusive province of the ALJ, *see Andrews*, 53 F.3d at 1039, and this Court will defer to the ALJ's determination in that regard so long as it is rational, *see Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019. While the absence of the symptoms to which Plaintiff refers might merely indicate a lack of symptoms on the particular day of the evaluation, and might not rule out ongoing disability, the absence of symptoms might also rationally be viewed as evidence that Plaintiff's ailments were not disabling. The Court will not substitute its judgment for that of the ALJ.

### B. Plaintiff's Subjective Complaint Testimony

Plaintiff argues that the ALJ erred by finding that her subjective complaint testimony of debilitating pain was not entirely credible. (Dkt. # 18 at 13-17.) "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Id.* at 958.

- 10 -

Here, the ALJ "considered the claimant's subjective allegations and found them less than credible in conjunction with the objective medical evidence of record." (R. at 291.) The ALJ specifically considered Plaintiff's allegation of anterior chest pain, noting that her allegations of chest wall discomfort "have been extensively worked up," yielding a variety of diagnoses of unclear etiology that are "not classically associated with anything, albeit with a twenty year pack-per-day cigarette habit." (R. at 291; *see* R. at 126-60.) The ALJ also considered Plaintiff's report of headaches. (R. at 291.) Plaintiff sometimes described these as "daily headaches" and sometimes as "occasional headaches." (*See* R. at 413, 416.) A CT scan of Plaintiff's head was normal (R. at 293; *see* R. at 415), and Plaintiff herself reported getting "good relief" with medication. (R. at 291; *see* R. at 412.) Dr. Hulsey likewise reported improvement with medication.[5] (R. at 416.)

The ALJ then considered Plaintiff's daily activities, describing them as "fairly normal." (R. at 291.) The ALJ noted Plaintiff's ability to drive, and that she takes her son to and from school, does housework, cooks, and does laundry. (R. at 291; *see* R. at 109-20; *see also* R. at 90-108.) The ALJ noted Plaintiff's assertion that she rests for four hours every day (R. at 291), but also took stock of Plaintiff's self-report that she goes out to nightclubs with friends at least once or twice a month, was at one point going to bars two to three times per week, and occasionally does light lifting of ice buckets at the bars (R. at 292; *see* R. at 86). The ALJ further noted that Plaintiff hikes on level terrain, participates in her children's daily activities, and plays billiards. (R. at 293.) The ALJ concluded by discussing the medical evidence, such as Plaintiff's medical scans, treatment history, and the medical opinions of the doctors who evaluated and reviewed Plaintiff's medical history, all of which showed generally normal functioning inconsistent with debilitating pain and fatigue. (*See* R. at 292-93.)

---

[5] As discussed above, the ALJ also described and rejected Dr. Bhalla's evaluation of Plaintiff's subjective complaints. *See supra* Part II.A.

- 11 -

1    Plaintiff argues that the ALJ did not provide a sufficient rationale for discounting
2 Plaintiff's subjective complaint testimony. Specifically, Plaintiff argues that the ALJ made
3 the "bare statement" that her claims were not supported by the evidence, did not identify
4 Plaintiff's subjective allegations, and relied merely on the reasoning that Plaintiff's
5 subjective complaints were not supported by the record. (Dkt. # 18 at 13-15.) All of these
6 challenges mischaracterize the ALJ's decision. As described above, the ALJ did not make
7 a "bare statement" that Plaintiff's claims were not supported by the evidence, but rather laid
8 out Plaintiff's subjective complaint assertions and then discussed inconsistencies in the
9 record, Plaintiff's daily activities, and the conflicting medical evidence, including the
10 physicians' opinions and Plaintiff's own reports of how well her pain was managed. (*See* R.
11 at 291-93.) Likewise, the ALJ did identify Plaintiff's subjective complaint allegations. (*See*
12 R. at 291, 292.) Finally, the ALJ did not base her decision on the mere reasoning that the
13 medical evidence did not fully support Plaintiff's assertions; rather, the ALJ relied on
14 conflicts both within Plaintiff's testimony and between her testimony and her medical tests,
15 the doctors' opinions, and Plaintiff's conceded physical activities. (*See* R. at 291-93.) The
16 ALJ's findings are sufficiently specific to convince the Court that the ALJ "did not arbitrarily
17 discredit claimant's testimony," *see Thomas*, 278 F.3d at 958, and substantial evidence in the
18 record supports the findings themselves. Thus, the Court finds no error.

19    Plaintiff also challenges the ALJ's decision to consider Plaintiff's ability to perform
20 household chores in determining whether Plaintiff's subjective complaints were truly
21 disabling. (Dkt. # 18 at 15-17.) It is well-established that the ability to perform household
22 chores may constitute substantial evidence that the claimant is not disabled by subjective
23 complaints. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("An ALJ is clearly allowed
24 to consider the ability to perform household chores[.]"). Moreover, the activities on which
25 the ALJ relied in this case have been found to properly inform the subjective complaint
26 analysis. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the
27 ALJ's credibility analysis where the ALJ "pointed out ways in which Rollins' claim to have
28 totally disabling pain was undermined by her own testimony about her daily activities, such

1 as attending to the needs of her two young children, cooking, housekeeping, [and] laundry");
2 *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (affirming the
3 ALJ's credibility analysis where the ALJ "determined that Morgan's ability to fix meals, do
4 laundry, work in the yard, and occasionally care for his friend's child served as evidence of
5 Morgan's ability to work"). As above, the ALJ's findings in this regard were based on
6 substantial evidence in the record, and the Court therefore finds no error.

### C.     Reliance on State Agency Reviewer

8 Plaintiff argues that the ALJ erred by relying on the opinion of the state agency
9 physician. (Dkt. # 18 at 17-21.) Plaintiff first argues that the opinion of the state agency
10 reviewer does not constitute substantial evidence. (Dkt. # 18 at 17.) "Opinions of a
11 nonexamining, testifying medical advisor may serve as substantial evidence when they are
12 supported by other evidence in the record and are consistent with it." *Morgan*, 169 F.3d at
13 600. Here, Plaintiff asserts that the "state agency reviewer's opinion is not supported by
14 other independent evidence in the record."[6] (Dkt. # 18 at 17.) However, ample evidence in
15 the record is consistent with and supports the conclusion that Plaintiff is not disabled and
16 could perform a range of sedentary work. Dr. Hulsey concluded that Plaintiff had a good
17 range of motion in flexion, extension, side bending, and rotation, that Plaintiff's reflexes,
18 strength in extremities, and fine motor coordination were normal, and that Plaintiff had no
19 muscle spasms in any region and no tenderness to palpation in any spinal region. (R. at 416.)
20 Plaintiff's MRI, x-ray, and CT scans were all essentially normal. (*See* R. at 337, 339, 415.)
21 Dr. Bhalla's own examination findings revealed no swelling, headaches, fatigue, or
22 numbness and generally normal functioning, including normal grip, sleep patterns, and

---

[6] Plaintiff notes that a nontreating physician's opinion may also constitute substantial evidence if the physician relied on independent clinical findings, *see Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), and argues that the physician in question here did not rely on such findings (Dkt. # 18 at 19-20). Plaintiff is correct (*see* R. at 199-202), but since the Court concludes that the opinion of the physician in question was supported by other evidence in the record, and therefore constitutes substantial evidence, Plaintiff's argument in this regard is moot.

- 13 -

physical and musculoskeletal responses. (R. at 347-48.) The exceptions were Plaintiff's reports of pain and morning stiffness lasting less than thirty minutes (*see id.*), but Dr. Bhalla's own examination notes revealed that Plaintiff's inflammation was "under control" with medication (R. at 192) and that her medications were having "good success" (R. at 193). Thus, other medical evidence in the record is consistent with and supports the conclusion that Plaintiff was not disabled by her rheumatism and fibromyalgia.

Second, Plaintiff asserts that the ALJ did nothing more than make a "bare statement" that the state agency physician's testimony was consistent with the record.[7] (Dkt. # 18 at 18.) To the contrary, the ALJ spent several pages explaining how Plaintiff's allegations of disabling pain and fatigue were inconsistent with the objective medical evidence, which the ALJ interpreted as showing that Plaintiff's symptoms were under control, consistent with the state agency physician's testimony. (*See* R. at 291-93.) The ALJ set out a detailed and thorough summary of the facts, stated his interpretation of those facts, and found that the state agency physician's testimony was supported by the record. (*See id.*) That is more than a "bare statement," and thus the Court finds no error.

Third, Plaintiff contends that the state agency physician's opinion "differs significantly from the RFC finding made by the ALJ." (Dkt. # 18 at 18.) The state agency physician testified that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could sit for about six hours in an eight-hour workday, and could stand or walk for about six hours in an eight-hour workday. (R. at 199.) The ALJ concluded that Plaintiff could lift and carry ten pounds occasionally and frequently, could sit for about six hours in an eight-hour workday, and could stand or walk for about two hours in an eight-hour workday. (R. at 293.) The ALJ's determination is consistent with her finding that Plaintiff does suffer from severe rheumatoid arthritis and fibromyalgia. (R. at 289-90.) It is also consistent with the ALJ's taking into account other RFC assessments in the record that

---

[7]Plaintiff also argues that the ALJ failed to fulfill the mandate of the Appeals Council to explain the weight given to the opinion on which it relied. (Dkt. # 18 at 18.) This is essentially the same argument as made here, and thus they are discussed together.

- 14 -

1  attributed to Plaintiff a lesser capacity to lift, stand, and walk during an eight-hour workday.
2  (*See* R. at 349-50, 396-400.)  Given that conflicting evidence subject to more than one
3  interpretation was presented, it fell to the ALJ to resolve the conflict.  *See Andrews*, 53 F.3d
4  at 1039; *Matney*, 981 F.2d at 1019.  "When the evidence before the ALJ is subject to more
5  than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d
6  at 1198.  The ALJ weighed the various RFC evidence and came to a middle-ground
7  resolution of slightly less work capacity than that advocated by the state agency physician
8  and slightly more than that advocated by Dr. Bhalla.  The ALJ's interpretation of the
9  evidence was not irrational, and thus the Court finds no error.

10  Finally, Plaintiff argues that "the Ninth Circuit has allowed the Commissioner [of
11  Social Security] to rely on opinions of nonexamining physicians only in cases where those
12  physicians testified at a hearing [and were] subject to cross-examination."  (Dkt. # 18 at 20-
13  21.)  Plaintiff attributes that proposition to *Andrews*, 53 F.3d at 1042; *Roberts v. Shalala*, 66
14  F.3d 179, 184 (9th Cir. 1995); and *Magallanes*, 881 F.2d at 752.  Plaintiff's reading of those
15  cases, however, is erroneous.

16  The *Andrews* court merely held that the ALJ did not err in giving greater weight to the
17  testimony of a nonexamining psychologist who did testify at a hearing, reasoning that
18  "greater weight may be given to [the] opinion of [a] nonexamining expert who testifies at [a]
19  hearing subject to cross-examination." 53 F.3d at 1042 (citing *Torres v. Secretary of H.H.S.*,
20  870 F.2d 742, 744 (1st Cir. 1989)).  The court was simply stating that an ALJ may assign
21  more weight to the opinion of a physician if he testifies than if he does not testify – the court
22  never suggested that in-person testimony was a necessary predicate for accepting a
23  physician's opinion.  *See id.*

24  The *Roberts* court did not touch on the issue at all.  While the medical advisor on
25  whose testimony the ALJ relied did testify at the hearing in *Roberts*, 66 F.3d at 182, the
26  Ninth Circuit neither stated nor suggested that the ALJ would not have been able to rely on
27  that testimony had it not been presented in person at the hearing, *see id.* at 184.  Rather, the
28  Ninth Circuit simply stated that "[t]he ALJ's justification for adopting the medical expert's

1 testimony was specific and legitimate . . . . [and] the decision was based on test results
2 contained in the record, which constituted substantial evidence." *Id.*

3 Finally, *Magallanes* not only fails to support Plaintiff's argument, but suggests
4 precisely the opposite. In *Magallanes*, the claimant argued that the opinion of a "non-
5 examining, non-treating physician should be discounted and is not substantial evidence when
6 contradicted by all other evidence in the record." 881 F.2d at 752. The court disagreed that
7 all of the evidence in the record contradicted the non-examining, non-treating physician's
8 opinion, concluding that the opinion was "consistent with other evidence." *Id.* The
9 *Magallanes* court then accepted the testimony and affirmed the ALJ's decision, reasoning
10 that "the reports of consultative physicians called in by the Secretary *may serve as*
11 *substantial evidence*. The assistance to the ALJ of such consultative physicians is obvious
12 and we refuse to exclude such evidence, *whether offered in writing or in person*." *Id.* at 752-
13 53 (emphases added and citations omitted). Plaintiff's argument is all but foreclosed by the
14 Ninth Circuit's statement that the report of a "non-examining, non-treating physician" was
15 admissible "in writing or in person," and that such a report "may serve as substantial
16 evidence" to sustain an ALJ's decision. *See id.*

17 Here, the ALJ outlined specific and legitimate reasons for crediting the state agency
18 physician's testimony by discussing the evidence in the record supporting a finding of non-
19 disability, and the facts to which the ALJ referred are supported by substantial evidence in
20 the record. (*See* R. at 292-93.) Therefore, the Court finds no error.

### D. Plaintiff's Residual Functional Capacity

Plaintiff's final argument is that the ALJ "erred by determining [Plaintiff's] residual functional capacity without any basis in the record for doing so." (Dkt. # 18 at 21-23.) RFC is defined as the most the claimant can do despite the limitations caused by her impairments. SSR 96-8p (July 2, 1996).[8] The RFC determination may be based on a wide variety of evidence in the record – the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id.* "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

Here, the ALJ concluded that Plaintiff has a sedentary RFC. (R. at 293.) Specifically, the ALJ concluded that "[s]he can sit for six hours a day, stand and walk for a total of two hours a day each, with alternate sitting and standing required, and she can lift and carry ten pounds frequently and slightly greater than ten pounds occasionally." (*Id.*) In making that determination, the ALJ stated that she was considering "all symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 291.) The ALJ further stated that she would particularly consider the medical opinions of the doctors involved. (*Id.*)

The ALJ then recounted Plaintiff's subjective complaint history. (*Id.*) She dismissed the assertion that Plaintiff was disabled by her pain as "less than credible" given the medical evidence and the internal conflicts in Plaintiff's testimony (R. at 291; *see* R. at 126-60, 412-16), specifically pointing out that Plaintiff was experiencing good relief from her subjective

---

[8]Social Security Rulings are binding on ALJs. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 n.6 (9th Cir.1989).

- 17 -

complaints with her medication (R. at 291; *see* R. at 412, 416). Thus, the ALJ concluded that "[t]he medical findings are modest and show that the medication regimen is effective, and is without significant side effects." (R. at 294.) As explained above, the ALJ discussed at some length its reasons for rejecting Dr. Bhalla's RFC opinion, spelling out the various medical examinations, scans, and opinions that conflicted with it. (R. at 292-93; *see* R. at 192-96, 199-202, 227, 337, 339, 347-50, 395-400, 403, 412-18.) Finally, the ALJ discussed Plaintiff's daily activities, household chores, and other physical exertions (R. at 291-93; *see* R. at 86, 109-20; *see also* R. at 90-108), specifically finding that "[t]hese factors demonstrate [Plaintiff] is capable of greater levels of activity than alleged and undermine her credibility" (R. at 292).

The ALJ drew further conclusions from the evidence it discussed. The ALJ stated that the evidence established Plaintiff's capacity to "perform fine and gross manipulation." (R. at 294.) The ALJ even credited the medical evidence regarding Plaintiff's (non-disabling) joint pain in determining Plaintiff's RFC, stating that "to [avoid] exacerbating joint pain with staying in a prolonged position, [Plaintiff] should be able to sit or stand at will [in any putative work setting]." (*Id.*) The ALJ further reasoned that the medical evidence established that Plaintiff could "use her upper and lower extremities for repetitive maneuvers such as pushing and pulling of controls." (R. at 293.)

Plaintiff's argument that the ALJ failed to provide a basis for her decision is thus untrue. The ALJ included a narrative discussion describing how the evidence supported her conclusions, and she cited to specific medical facts and nonmedical evidence to support those conclusions. *See* SSR 96-8p. Therefore, the ALJ did not err.

**CONCLUSION**

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS HEREBY ORDERED** denying Plaintiff's Motion for Summary Judgment.

1  **IT IS FURTHER ORDERED** granting Defendant's Cross-Motion for Summary Judgment.

DATED this 15th day of September, 2008.

G. Murray Snow
United States District Judge